**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 21-62271-CIV-ALTMAN**

**BADI BURGOS**,

    *Petitioner,*

*v.*

**RICKY D. DIXON, SECRETARY,
DEPARTMENT OF CORRECTIONS**,

    *Respondent.*

_____/

**ORDER**

Badi Burgos, a Florida prisoner, has filed a petition for writ of habeas corpus under 28 U.S.C. § 2254, challenging his state-court conviction and sentence. *See* Petition [ECF No. 1]. After careful review, we **DISMISS** Grounds Four and Five and parts of Ground Six as procedurally defaulted, and we **DENY** the remaining claims on the merits.

**THE FACTS**

A grand jury in Broward County charged Burgos and his codefendant, Drew Betterly, with three crimes: felony murder in the first degree (Count 1), and two counts of armed robbery with a firearm (Counts 2 and 3). *See* Indictment [ECF No. 9-1] at 3–4. At trial, the State alleged that, on May 20, 2010, Betterly contacted the two victims, James Swagger and Stephen Langsford, to arrange a sale of "prescription drugs known as 'Roxicet.'" Probable Cause Affidavit [ECF No. 9-2] at 182. The next day, Swagger and Langsford entered a vehicle with Betterly and Burgos to complete the sale, but Burgos "produced a firearm pointing it at Swagger and Langsford . . . and demand[ed] their money." *Id.* at 181. Burgos then "intentionally struck Langsford several times about the head with the firearm," and a struggle over the firearm ensued. *Ibid.* During this confrontation, Langsford was shot—and he

later died. *Id.* at 182. On October 31, 2014, the jury found Burgos guilty on all three counts. *See* Verdict [ECF No. 9-1] at 6–11.

The trial judge sentenced Burgos to life in prison on Count 1, twenty-five years on Count 2, and twenty years on Count 3—all to be served concurrently. *See* Judgment and Sentencing Orders [ECF No. 9-1] at 15–25. Burgos appealed his conviction and sentence to the Fourth DCA. *See* Direct Appeal Notice of Appeal [ECF No. 9-1] at 27. In that direct appeal, he raised four arguments: (1) that the trial court erred "when it failed to conduct a *Nelson*[1] inquiry" after Burgos "indicate[d] to the trial judge that he desire[d] to discharge his court appointed counsel," Direct Appeal Initial Brief [ECF No. 9-1] at 44;[2] (2) that the trial court failed to "conduct a *Faretta*[3] hearing upon Mr. Burgos unequivocally asserting his constitutional right to self representation," *id.* at 46; (3) that the trial court erred "when it summarily dismissed Mr. Burgos's *pro se* speedy trial demand," *id.* at 47; and (4) that "the trial court abused its discretion when it failed to instruct the jury on third degree felony murder," *id.* at 50. On July 27, 2017, the Fourth DCA summarily affirmed the trial court in an unwritten opinion. *See Burgos v. State*, 228 So. 3d 568, 568 (Fla. 4th DCA 2017).

Burgos, through counsel, then filed a "Motion for Postconviction Relief" under Fla. R. Crim. P. 3.850, *see* Postconviction Motion [ECF No. 9-1] at 117, which he later amended, *see* Amended Postconviction Motion [ECF No. 9-1] at 129. The Amended Postconviction Motion asserted the following claims to relief: (1) the "newly discovered" affidavits of Betterly, Herman Farrell, and Cory Frost established that Burgos was not "an active participant in the crimes charged" but was, instead, "the intended victim," *id.* at 136–38; (2) the State's post-appeal notice that "the Broward Sherriff Office's [sic] crime lab utilized improper DNA testing protocol" was newly discovered evidence that

---

[1] *Nelson v. State*, 274 So. 2d 256 (Fla. 4th DCA 1973).
[2] Burgos, through counsel, later conceded that his *Nelson* argument "was not applicable in his case" because he wasn't represented by a court-appointed lawyer during the trial. Direct Appeal Reply Brief [ECF No. 9-1] at 108.
[3] *See Faretta v. California*, 422 U.S. 806 (1975).

exculpated Burgos, *id.* at 140; (3) trial counsel was ineffective for exhibiting a "do nothing attitude" after a juror "saw Mr. Burgos in handcuffs while trial proceedings were in recess," *id.* at 145; (4) trial counsel was ineffective for failing to "properly prepare for trial, to investigate critical issues, and to present a coherent defense supported by competent evidence," *id.* at 154; and (5) the "cumulative effect of the errors" alleged in the Amended Postconviction Motion deprived Burgos of a fair trial, *id.* at 155.

On October 6, 2020, the state postconviction court denied Burgos's Amended Postconviction Motion. *See* Order Denying Amended Postconviction Motion [ECF No. 9-1] at 174–78. The state court *both* "adopt[ed] and incorporate[d] [the] legal and factual reasoning that is contained in the State's Response" *and* gave its own independent reasons for denying Burgos's claims. *See id.* at 176–78; *see also* State's Postconviction Response [ECF No. 9-1] at 160–72. Burgos filed a motion for rehearing, arguing that the court should've given him an evidentiary hearing on his first "newly discovered evidence" claim because "an evidentiary hearing [was] necessary to assess the credibility of all three affiants." Motion for Rehearing [ECF No. 9-1] at 184–85. The state postconviction court summarily denied this motion on November 12, 2020. *See* Order Denying Motion for Rehearing [ECF No. 9-1] at 195.

That same day, Burgos appealed the denial of the Amended Postconviction Motion to the Fourth DCA. *See* Postconviction Notice of Appeal [ECF No. 9-1] at 197. In this first collateral appeal, Burgos raised only two of the five issues he'd originally presented in the Amended Postconviction Motion: (1) that the state postconviction court erred by not holding "an evidentiary hearing on [Burgos's] newly discovered evidence claims because [the claims] are not facially invalid or conclusively refuted by the record," Postconviction Initial Brief [ECF No. 9-1] at 218; and (2) that trial counsel was ineffective "in failing to investigate and/or depose critical witnesses which would have led to the discovery of exculpatory evidence," *id.* at 235. The Fourth DCA affirmed the state postconviction

court in an unwritten opinion, *see Burgos v. State*, 324 So. 3d 488, 488 (Fla. 4th DCA 2021), and issued its mandate on September 24, 2021, *see* Postconviction Mandate [ECF No. 9-2] at 40.

Now proceeding *pro se*, Burgos filed this Petition on October 21, 2021.[4] *See* Petition at 1.

## THE LAW

### I.     The Antiterrorism and Effective Death Penalty Act ("AEDPA")

AEDPA instructs district courts to deny any claim that was "adjudicated on the merits" in a state-court proceeding unless that adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States, or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *Harrington v. Richter*, 562 U.S. 86, 97–98 (2011) (summarizing 28 U.S.C. § 2254(d)–(e)). To have "adjudicated [the claim] on the merits," the state court need not have issued any kind of formal opinion or even outlined its reasoning. *Id.* at 99 ("When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary."). Rather, when a state court doesn't articulate its reasons for the denial, the federal court must "'look through' the unexplained decision to the last related state-court decision that does provide a rationale" and "then presume that the unexplained decision adopted the same reasoning." *Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018). "Clearly established Federal law" means "the holdings, as opposed to the dicta, of [the United States Supreme Court's] decisions as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. 362, 412 (2000). To be "contrary to clearly established federal law, the state court must either (1)

---

[4] "Under the 'prison mailbox rule,' a *pro se* prisoner's court filing is deemed filed on the date it is delivered to prison authorities for mailing." *Williams v. McNeil*, 557 F.3d 1287, 1290 n.2 (11th Cir. 2009). "Absent evidence to the contrary, [courts] assume that a prisoner delivered a filing to prison authorities on the date that he signed it." *Jeffries v. United States*, 748 F.3d 1310, 1314 (11th Cir. 2014).

apply a rule that contradicts the governing law set forth by Supreme Court case law, or (2) reach a different result from the Supreme Court when faced with materially indistinguishable facts." *Ward v. Hall*, 592 F.3d 1144, 1155 (11th Cir. 2010) (cleaned up).

For "a state court's application of [Supreme Court] precedent" to be "'unreasonable, the state court's decision must have been more than incorrect or erroneous. The state court's application must have been objectively unreasonable." *Wiggins v. Smith*, 539 U.S. 510, 520–21 (2003) (cleaned up). "[I]t is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by [the Supreme] Court." *Richter*, 562 U.S. at 101. "And an unreasonable application of those holdings must be objectively unreasonable, not merely wrong; even clear error will not suffice. To satisfy this high bar, a habeas petitioner is required to show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Woods v. Donald*, 575 U.S. 312, 316 (2015) (cleaned up).

Section 2254(d) similarly prohibits federal judges from reevaluating a state court's factual findings unless those findings were "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). To establish that a state court's factual findings were unreasonable, "the petitioner must rebut 'the presumption of correctness [of a state court's factual findings] by clear and convincing evidence.'" *Ward*, 592 F.3d at 1155–56 (quoting 28 U.S.C. § 2254(e)(1)).

"AEDPA's standard is intentionally difficult to meet." *Woods*, 575 U.S. at 315 (cleaned up). When reviewing state criminal convictions on collateral review, "federal judges are required to afford state courts due respect by overturning their decisions only when there could be no reasonable dispute that they were wrong. Federal habeas review thus exists as a guard against extreme malfunctions in

the state criminal justice systems, not a substitute for ordinary error correction through appeal." *Id.* at 316 (cleaned up).

Even if a petitioner meets AEDPA's "difficult" standard, he must still show that any constitutional error had a "substantial and injurious effect or influence" on the verdict. *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993). The *Brecht* harmless-error standard requires habeas petitioners to prove that they suffered "actual prejudice." *Mansfield v. Sec'y, Dep't of Corr.*, 679 F.3d 1301, 1307 (11th Cir. 2012). As the Supreme Court recently explained, while the passage of AEDPA "announced certain new conditions to [habeas] relief," it didn't eliminate *Brecht*'s actual-prejudice requirement. *Brown v. Davenport*, 142 S. Ct. 1510, 1524 (2022). In other words, a habeas petitioner must satisfy *Brecht*, even if AEDPA applies. *See id.* at 1526 ("[O]ur equitable precedents remain applicable 'whether or not' AEDPA applies." (citing *Fry v. Pliler*, 551 U.S. 112, 121 (2007)). In short, a "federal court must *deny* relief to a state habeas petitioner who fails to satisfy either [*Brecht*] or AEDPA. But to *grant* relief, a court must find that the petition has cleared both tests." *Id.* at 1524 (emphasis in original); *see also Mansfield*, 679 F.3d at 1307 ("[A] habeas petition cannot be successful unless it satisfies both [AEDPA] and *Brecht*.").

## II.   AEDPA's Procedural Requirements

"[A] person in custody pursuant to the judgment of a State court" has one year to file a habeas petition in federal court. 28 U.S.C. § 2244(d)(1). That one-year period "runs from the latest of" the following dates:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly

recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1)(A)–(D). This limitations defense is, of course, waivable. *See Paez v. Sec'y, Fla. Dep't of Corr.*, 947 F.3d 649, 655 (11th Cir. 2020) (explaining that the State may express its intent to "waive the limitations bar").

Beyond meeting this one-year window, though, federal habeas petitioners must also *exhaust* their claims by "*properly* present[ing] [them] to the state courts." *O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999) (emphasis in original). Specifically, federal habeas petitioners must "fairly present every issue raised in [their] federal petition to the state's highest court, either on direct appeal or on collateral review." *Mason v. Allen*, 605 F.3d 1114, 1119 (11th Cir. 2010) (cleaned up). "If a petitioner fail[ed] to 'properly' present his claim to the state court—by exhausting his claim[ ] and complying with the applicable state procedure—prior to bringing his federal habeas claim, then [§ 2254] typically bars [courts] from reviewing the claim." *Ibid.* In other words, where a petitioner has not "*properly* presented his claims to the state courts," the petitioner will have "procedurally defaulted his claims" in federal court. *O'Sullivan*, 526 U.S. at 848.

All that said, "[s]tates can waive procedural bar defenses in federal habeas proceedings, including exhaustion." *Vazquez v. Sec'y, Fla. Dep't of Corr.*, 827 F.3d 964, 966 (11th Cir. 2016) (cleaned up)). But "[a] State shall not be deemed to have waived the exhaustion requirement . . . unless the State, through counsel, *expressly* waives the requirement." 28 U.S.C. § 2254(b)(3) (emphasis added); *see also McNair v. Campbell*, 416 F.3d 1291, 1304 (11th Cir. 2005) (same).

### III.   Ineffective Assistance of Counsel

The Sixth Amendment affords a criminal defendant the right to "the Assistance of Counsel for his defen[s]e." U.S. CONST. amend. VI. "The benchmark for judging any claim of ineffectiveness

must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland v. Washington*, 466 U.S. 668, 686 (1984). To prevail on a claim of ineffective assistance of counsel, a habeas litigant must demonstrate "that (1) his counsel's performance was deficient and 'fell below an objective standard of reasonableness,' and (2) the deficient performance prejudiced his defense." *Raleigh v. Sec'y, Fla. Dep't of Corr.*, 827 F.3d 938, 957 (11th Cir. 2016) (quoting *Strickland*, 466 U.S. at 687–88). This same standard applies to alleged errors made by both trial counsel and appellate counsel. *See Farina v. Sec'y, Fla. Dep't of Corr.*, 536 F. App'x 966, 979 (11th Cir. 2013) ("A claim of ineffective assistance of appellate counsel is evaluated under the same standard as for trial counsel.").

To establish the first prong (deficiency), "a petitioner must [show] that *no* competent counsel would have taken the action that his counsel did take[.]" *Chandler v. United States*, 218 F.3d 1305, 1315 (11th Cir. 2000) (en banc) (emphasis added). So, if "some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial[,]" counsel could not have performed deficiently. *Waters v. Thomas*, 46 F.3d 1506, 1512 (11th Cir. 1995) (en banc) (quoting *White v. Singletary*, 972 F.2d 1218, 1220 (11th Cir. 1992)).

As for the second prong (prejudice), "a defendant is prejudiced by his counsel's deficient performance if 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Porter v. McCollum*, 558 U.S. 30, 40 (2009) (quoting *Strickland*, 466 U.S. at 694). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. To succeed on this prong, a defendant must show that "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687.

## ANALYSIS

In his Petition, Burgos advances six grounds for relief—all of which restate claims he previously raised *either* on direct appeal *or* on collateral review. In Ground One, he alleges that the trial court "reversibly erred [when] it failed to conduct a *Nelson* inquiry upon Petitioner's making it clear to the trial court that he wished to discharge his counsel." Petition at 4. Burgos claims in Ground Two that the trial court similarly erred when it "failed to conduct a *Faretta* hearing upon Petitioner's unequivocally asserting his constitutional right to self representation[.]" *Id.* at 5. Burgos avers in Ground Three that the trial court erred when it summarily denied "two *pro se* demands for speedy trial." *Id.* at 7. In Ground Four, Burgos contends that the trial court erred when it "refused the Petitioner['s] request to give the jury an instruction on third degree felony murder[.]" *Id.* at 8–9. Burgos argues in Ground Five that the trial court impermissibly denied his newly-discovered-evidence claim "without an evidentiary hearing." *Id.* at 11. Finally, in Ground Six, Burgos castigates his trial lawyer for making the following three tactical errors: (1) failing "to depose [the] witnesses who were present the night before the incident," (2) failing "to investigate anything pertaining to DNA," and (3) failing to ask for a continuance "because [counsel] was dealing with the death of his wife." *Id.* at 13–14.

In its Response to the Petition, the Respondent urges us to deny Burgos's request for relief. *See* Response to Order to Show Cause ("Response") [ECF No. 8] at 1. As a preliminary matter, though, the Respondent concedes that "the instant Petition is timely filed pursuant to 28 U.S.C. § 2254." *Id.* at 3. And we'll accept that concession. *See Day v. McDonough*, 547 U.S. 198, 209–10 (2006) ("[A] district court is not required to doublecheck the State's math [for timeliness purposes]."). The Respondent also agrees that Burgos has properly exhausted Grounds One, Two, and Six (in part). *See id.* at 4–5, 7. Given this "express waiver" of an exhaustion defense, we'll consider each of these three claims on the merits. *See Vazquez*, 827 F.3d at 966 ("States can waive procedural bar defenses in federal habeas proceedings, including exhaustion. . . . [A] State shall not be deemed to have waived the exhaustion

requirement unless the State, through counsel, expressly waives the requirement." (cleaned up)). On the other hand, the Respondent insists that Grounds Three, Four, and Five are all "based on Florida state law" and that Burgos failed to exhaust the *federal* aspects of these claims in state court. *See id.* at 5–7. And the Respondent maintains that certain parts of Ground Six are unexhausted because Burgos "did not challenge the trial court's summary denial of [the] sub-claim when he appealed[.]" *Id.* at 40. So, we'll decide, first, whether Grounds Three, Four, Five, and (parts of) Six have been properly exhausted. After that, we'll consider any remaining claims on the merits.

## I.      The Unexhausted Grounds

A § 2254 petition "shall not be granted unless it appears that the applicant has exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A). The Eleventh Circuit has clarified that exhaustion "has two essential requirements": (1) "a federal claim must be fairly presented to the state courts"; and (2) the petitioner "must take his claim to the state's highest court, either on direct appeal or collateral review." *Johnson v. Florida*, 32 F.4th 1092, 1096 (11th Cir. 2022) (cleaned up). The Respondent contends that Grounds Three, Four, and Five of the Petition fail to meet this first "requirement." *See* Response at 5–6 ("[Grounds Three and Four were] raised as a state law claim on direct, and brief references to the Sixth and Fourteenth Amendments of the United States Constitution were insufficient to transform [them] into a federal claim."); *id.* at 7 ("[Ground Five] was based on the Florida state law dealing with claims of newly discovered evidence, and thus the claim is unexhausted."). And the Respondent says that Burgos failed to exhaust certain parts of Ground Six because, as to those claims, he never "challenged" the postconviction court's rulings on appeal. *Id.* at 39–40. In his Reply, Burgos focuses on Grounds Three, Four, and Five and argues that, with respect to those claims, he presented "clearly established federal law" to the state courts. *See* Reply [ECF No. 12] at 9. Although neither party has things exactly right, we conclude that Burgos has properly

exhausted Ground Three, that he's failed to exhaust Grounds Four and Five, and that he's exhausted *some* (but not all) of Ground Six. We'll take each in turn.

### A. Ground Three

In the state-court version of Ground Three, Burgos claimed that he "filed two *pro se* demands for speedy trial" under FLA. R. CRIM. P. 3.191(b). Direct Appeal Initial Brief [ECF No. 9-1] at 69. Rather than adjudicate these demands on the merits, the trial court "summarily dismissed" them on the ground that Burgos was represented by counsel—meaning that his *pro se* pleadings were "a legal nullity." *Id.* at 69–70. Burgos told the Fourth DCA that, in doing so, the trial court had erred because he'd previously and "unequivocally asserted his right to self-representation by filing a request to dismiss his [counsel.]" *Id.* at 72. The trial court, Burgos went on, had ignored this earlier request and had thus violated his "constitutional right to self-representation pursuant to the Sixth and Fourteenth Amendments" by dismissing his two *pro se* demands under the mistaken assumption that Burgos was still represented by counsel. *Ibid.* Burgos essentially repeats this same claim in his Petition—though he now omits any reference to Rule 3.191(b). *See* Petition at 7 ("The Petitioner argued that the trial court was required to consider his speedy trial [motion] due to his unequivocal request for self-representation. Furthermore, the trial court's summary denial of his demand for speedy trial was an abuse of discretion and resulted in a denial of his constitutional rights.").

In the Respondent's view, "the focus of [Burgos's] argument was that the trial court abused its discretion by denying Petitioner's motions for speedy trial, thereby violating Florida Rule of Criminal Procedure 3.191[.]" Response at 5. And, the Respondent adds, "the brief references to the Sixth and Fourteenth Amendments of the United States Constitution were insufficient to transform it into a federal claim." *Ibid.* We disagree. It's true that Burgos's state-court argument relied (in part) on Rule 3.191. It's true, too, that a federal habeas petitioner cannot use § 2254 to challenge a state court's misapplication of Rule 3.191. *See Mattingly v. Sec'y, Fla. Dep't of Corr.*, 2019 WL 5102816, at *5

(M.D. Fla. Oct. 11, 2019) (Howard, J.) ("As an initial matter, to the extent Mattingly argues the circuit court failed to comply with Florida Rule of Criminal Procedure 3.191, this claim is not cognizable for federal habeas relief." (citing *Swarthout v. Cooke*, 562 U.S. 216, 219 (2011))). But Burgos did much more than simply rely on Rule 3.191. Even in state court, he alleged that, by denying his request for a speedy trial under Rule 3.191, the trial court *continued* to ignore (what he says) were valid prior requests to proceed *pro se*. *See* Direct Appeal Initial Brief [ECF No. 9-1] at 71 ("While it [is] true that a defendant does not have a constitutional right to combine self-representation with representation by counsel, or to engage in any type of hybrid representation, it is clear from these facts that the trial judge abused his discretion when he summarily dismissed Mr. Burgos'[s] demands for speedy trial, despite Mr. Burgos'[s] unequivocal request for self-representation."). And questions surrounding a criminal defendant's decision to proceed *pro se* implicate the Sixth Amendment to the U.S. Constitution. *See United States v. Hakim*, 30 F.4th 1310, 1321 (11th Cir. 2022) ("The right to self-representation—to make one's defense personally—is necessarily implied by the structure of the Sixth Amendment. . . . [The Sixth Amendment] grants to the accused personally the right to make his defense." (citing *Faretta*, 422 U.S. at 819 (cleaned up))).

Ground Three thus dovetails nicely with Grounds One and Two—two Sixth Amendment claims the Respondent *concedes* Burgos has exhausted. *See* Direct Appeal Initial Brief [ECF No. 9-1] at 72–73 (arguing that the trial court wouldn't have denied his speedy-trial requests if it had "properly considered Mr. Burgos'[s] unequivocal assertion of self-representation" and adequately addressed his request for a *Nelson* hearing). Burgos, in short, argued to the state courts—as he does here—that the denial of his *pro se* request for a speedy trial was just a part of a series of decisions the trial court made that impacted his *federal* constitutional rights. *See ibid.* Since we find that Burgos "alert[ed] th[e] [state] court to the federal nature of the claim," *Baldwin v. Reese*, 541 U.S. 27, 29 (2004)—and that he then

repeated that same federal claim in this Petition—we conclude that he's properly exhausted Ground Three.

### B. Ground Four

We come out the other way on Ground Four. Burgos *did* raise the state-law basis for this claim on direct appeal. Before the Fourth DCA, he cited the Florida Rules of Criminal Procedure for the proposition that, "if the indictment charges an offense divided into degrees, the jury may find the defendant guilty of the offense charged, or any lesser degree supported by the evidence. The judge shall instruct on any degree supported by the evidence." Direct Appeal Initial Brief [ECF No. 9-1] at 74 (citing FLA. R. CRIM. P. 3.490). In state court, Burgos noted that trial counsel had "requested that the Judge instruct the jury on third-degree felony murder, as a lesser-included offense of felony murder" because there was evidence that Mr. Langsford was killed in a botched drug deal—*i.e.*, that he was killed *without* premeditation. *Id.* at 75; *see also* FLA. STAT. § 782.04(4) ("The unlawful killing of a human being, when perpetrated without any design to effect death, by a person engaged in the perpetration of [certain felony offenses] is murder in the third degree[.]"). In arguing that the trial court "abused its discretion when it denied Mr. Burgos' request to have the jury instructed as to third-degree felony murder," *id.* at 77, Burgos relied *exclusively* on Florida law—especially the Florida Supreme Court's decision in *Khianthalat v. State*, 974 So. 2d 359 (Fla. 2008). And Ground Four of the Petition includes this very same argument—*viz.*, that the trial court should've given the lesser-included instruction because there was "sufficient evidence in the record" for the jury to find Burgos guilty of third-degree felony murder. Petition at 9. Before us, though, Burgos adds the perfunctory (and conclusory) allegation that he "has stated a federal constitutional claim." *Ibid.*

This time, we agree with the Respondent that Burgos failed to present the federal nature of this claim in state court. A state trial court's decision *not* to instruct the jury on a state-law, lesser-included offense doesn't implicate any federal rights. *See Harris v. Crosby*, 151 F. App'x 736, 737–38

(11th Cir. 2005) ("Harris' initial brief can be fairly construed as also asking this Court to review whether the state trial court's failure to provide the additional lesser included offense instruction was an error under state law. We will not reach the merits of that argument. It is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." (cleaned up)). And, when he raised this claim before the Fourth DCA, Burgos *never* cited *any* principle of federal law. On the contrary, his argument in state court relied exclusively on the application of a Florida Supreme Court decision, "which sets forth the rule for when permissive lesser-included offenses may be read to the jury." Direct Appeal Initial Brief [ECF No. 9-1] at 75–76 (citing *Khianthalat*, 974 So. 2d at 361).

The Eleventh Circuit hasn't hesitated to find that a petitioner's exclusive reliance on state law is insufficient to present a federal claim. *See, e.g.*, *Preston v. Sec'y, Fla. Dep't of Corr.*, 785 F.3d 449, 458–59 (11th Cir. 2015) ("[The petitioner] did not cite a single federal case, and relied instead on a panoply of Florida cases discussing the element of premeditation, as defined by state law. He never mentioned the federal Due Process Clause, or, indeed, any other federal constitutional provision."). Even in this federal Petition, in fact, Burgos never identifies the specific federal right (he thinks) the trial court violated, and he again references the Florida Supreme Court's decision in *Khianthalat*. *See* Petition at 9. Because Ground Four is not a "federal claim [that] has been fairly presented to the state courts," *Picard v. Connor*, 404 U.S. 270, 275 (1971), Burgos has failed to exhaust it.

In his Reply, Burgos insists that Ground Four *does* present a federal claim because (he now says) the trial court's refusal to grant "Petitioner's request to instruct the jury on third degree felony murder" violated the due-process right the Supreme Court identified in *Beck v. Alabama*, 447 U.S. 625 (1980). Reply at 8–9. Two problems with this. *One*, Burgos never mentioned *Beck* or the Fourteenth Amendment in state court, *see generally* Direct Appeal Initial Brief [ECF No. 9-1] at 74–80, so he hasn't met AEDPA's exhaustion requirement, *see Duncan v. Henry*, 513 U.S. 364, 366 (1995) ("If a habeas petitioner wishes to claim that [a state trial court] denied him due process of law guaranteed by the

Fourteenth Amendment, he must say so, not only in federal court, but in state court."). *Two*, contra Burgos's position in Reply, Ground Four doesn't implicate *Beck* or the Fourteenth Amendment at all. In *Beck*, the Supreme Court held that a state is "constitutionally prohibited from absolutely barring a jury in a capital case from considering a lesser-included offense to that of capital murder." *Roberts v. Comm'r, Ala. Dep't of Corr.*, 677 F.3d 1086, 1094 (11th Cir. 2012) (citing *Beck*, 447 U.S. at 638). *Beck* thus doesn't apply when a state court declines "to instruct the jury on lesser included offenses" in a *non-capital* case. *Harris*, 151 F. App'x at 737 (quoting *Perry v. Smith*, 810 F.2d 1078, 1080 (11th Cir. 1987)). And Burgos's case, which didn't involve the death penalty, was *not* a "capital case." *Beck*, 447 U.S. at 629 (defining a "capital crime" as one in which the court "is required to impose the death penalty").[5] In any event, the state jury *was* given the option of convicting Burgos of *a different* lesser-included offense—manslaughter. *See* Verdict [ECF No. 9-1] at 6. And, by its own terms, the rule the Supreme Court enunciated in *Beck* doesn't apply when a state-court jury is "given the option of finding petitioner guilty of a lesser included noncapital offense[.]" *Schad v. Arizona*, 501 U.S. 624, 646 (1991), *abrogated on other grounds by Ramos v. Louisiana*, 140 S. Ct. 1390 (2020).

Because Burgos failed to raise Ground Four as a federal claim in his state-court proceedings, that claim is unexhausted.

### C. Ground Five

Ground Five fails for a separate reason. Burgos first presented this claim in his Amended Postconviction Motion, to which he appended the affidavits of Drew Betterly, his codefendant; Herman Farrell, a former cellmate of Betterly's; and Cory Frost, Burgos's "childhood friend." *See*

---

[5] First-degree felony murder *is* a "capital felony" under Florida law; as a result, a defendant convicted of first-degree felony murder *can* receive the death penalty. *See* FLA. STAT. § 782.04(1)(a)(2), (1)(b). But a Florida state court can only impose the death penalty if (1) the prosecutor "give[s] notice to the defendant and file[s] the notice with the court within 45 days after arraignment," and (2) the jury unanimously recommends the death penalty after a "separate sentencing proceeding." *Id.* §§ 782.04(1)(b), 921.141(1)–(2). Since neither of these things happened in our case, Burgos wasn't eligible for the death penalty after trial.

Amended Postconviction Motion [ECF No. 9-1] at 136–37. Burgos claimed that these affidavits were "newly discovered evidence" under FLA. R. CRIM. P. 3.850(b)(1) because they tended to show that Burgos was actually *the victim* of a botched robbery, and that he only shot Langsford in self-defense. *See, e.g.*, *ibid.* (noting that Betterly "provided an affidavit indicating that Mr. Burgos was acting in self-defense," that Farrell "indicated that Drew Betterly admitted to him that Mr. Burgos was the intended victim," and that Frost "overhear[d] Mr. Betterly [and the victims] conspiring to rob Mr. Burgos of his prescription medication"). The state postconviction court found that none of these affidavits qualified as "newly discovered evidence" and denied the claim without an evidentiary hearing. *See* Order Denying Amended Postconviction Motion [ECF No. 9-1] at 176.

In his motion for rehearing and on appeal, Burgos modified his argument slightly. In those later proceedings, he alleged that the state postconviction court had erred by denying his newly-discovered-evidence claim *without* first holding an evidentiary hearing to assess the credibility of the three affiants. *See* Motion for Rehearing [ECF No. 9-1] at 184–85 ("Mr. Burgos submits these witness's [sic] credibility is at issue, and an evidentiary hearing is necessary to assess the credibility of all three affiants."); Postconviction Initial Brief [ECF No. 9-1] at 231 ("The court erroneously held even if admissible, the testimony of Frost, Ferrell and Betterly would probably not result in an acquittal on retrial. Their collective testimony, which the court was obliged to take as truthful . . . could only properly be evaluated at an evidentiary hearing where the judge could make credibility assessments and weigh that testimony against all other admissible evidence."). And it's this *later* iteration of the claim (*not* the underlying newly-discovered-evidence claim) that Burgos advances in this Petition. *See* Petition at 11 ("The state court denied this claim without an evidentiary hearing which was an unreasonable determination based on the undisputed facts of the three individuals who submitted the affidavits.").

Ground Five fails to state a viable claim. In Burgos's view, it was "unreasonable" for the state postconviction court to deny his newly-discovered-evidence claim *without* first holding an evidentiary hearing. Petition at 11. But the Eleventh Circuit has been pellucid that "defects in state collateral proceedings do not provide a basis for habeas relief." *Carroll v. Sec'y, DOC*, 574 F.3d 1354, 1365 (11th Cir. 2009). This well-established rule applies when a petitioner challenges a state court's decision *not* to hold an evidentiary hearing on one or another of his Rule 3.850 claims. *See ibid.* ("[W]e have stated that it is 'beyond debate' that a state court's failure to conduct an evidentiary hearing on a post-conviction motion does not constitute a cognizable claim for habeas relief."); *Spradley v. Dugger*, 825 F.2d 1566, 1568 (11th Cir. 1987) ("[T]he state court's failure to hold a hearing on petitioner's 3.850 motion . . . [doesn't] undermin[e] the validity of petitioner's conviction. Because [this claim] goes to issues unrelated to the cause of petitioner's detention, it does not state a basis for habeas relief."). We thus cannot agree with Burgos that the state court's refusal to hold an evidentiary hearing denied him "a substantive Constitutional right." Reply at 11.[6]

Because Ground Five isn't cognizable on federal habeas review, it must be **DISMISSED**—exhausted or not. *See McCullough v. Singletary*, 967 F.2d 530, 535 (11th Cir. 1992) ("A state's interpretation of its own laws or rules provides no basis for federal habeas corpus relief, since no question of a constitutional nature is involved.").

### D. Ground Six

In Ground Six, Burgos says that trial counsel was ineffective for "failing to investigate and prepare for trial." Petition at 13. Here, Burgos alleges that his lawyer made three separate errors: (1) "counsel failed to depose [the] witnesses who were present the night before the incident" and whose

---

[6] Note, too, that this claim is unexhausted: Since the claim implicates no federal constitutional right, Burgos couldn't have "fairly presented" its *federal* nature in state court. *See generally* Motion for Rehearing [ECF No. 9-1] at 184–92; Postconviction Initial Brief [ECF No. 9-1] at 218–34; Postconviction Reply Brief [ECF No. 9-2] at 8–26.

testimony (Burgos insists) would've caused the jury "to question the credibility of the other witnesses"; (2) "counsel failed to investigate anything pertaining to DNA," even though Burgos "was not a major contributor to any of the DNA at the crime scene"; and (3) counsel should have requested a continuance "so that he could deal with the mental and emotional loss of [his wife]." *Id.* at 13–14. Although the Respondent concedes that Burgos fully exhausted the first of these three subclaims—counsel's alleged failure to depose certain witnesses[7]—it maintains that Burgos failed to raise the remaining subclaims on appeal. *See* Response at 40. We agree.

We'll start with the second subclaim (that counsel failed to "investigate anything pertaining to DNA," Petition at 13), which Burgos never raised on appeal. In his Amended Postconviction Motion (it's true), Burgos *did* argue that counsel failed to test "the accuracy of Mr. Betterly's DNA located on the gun holster," that counsel failed to assess whether "the CPI calculations were wrong," and that counsel didn't determine whether "Mr. Burgos' DNA was located anywhere on the body of Mr. Langsford, the deceased." Amended Postconviction Motion [ECF No. 9-1] at 151. The state postconviction court found this subclaim "speculative in nature and without merit." Order Denying Amended Postconviction Motion [ECF No. 9-1] at 177. And Burgos, for whatever reason, elected never to mention this argument again on appeal. *See generally* Postconviction Initial Brief [ECF No. 9-1] at 235–38. A claim isn't exhausted unless the petitioner has "give[n] the state courts one full opportunity to resolve any constitutional issues by invoking *one complete round of the State's established*

---

[7] Despite this waiver, it seems clear to us that Burgos only *partially* exhausted this first subclaim. In his Amended Postconviction Motion, Burgos insisted that his trial counsel should have deposed *at least* four witnesses: "Drew Betterly, Cory Frost, Alex Brierly, and Michael Owens." Amended Postconviction Motion [ECF No. 9-1] at 149. But, when he appealed the denial of his Amended Postconviction Motion, Burgos argued only that his lawyer had been ineffective for not deposing Betterly and Frost; in other words, he didn't mention Brierly or Owens at all. *See* Postconviction Initial Brief [ECF No. 9-1] at 235–38. Since he never mentioned trial counsel's failure to depose Brierly and Owens before "the state's highest court, either on direct appeal or collateral review," *Johnson*, 32 F.4th at 1096, that portion of this subclaim is unexhausted. In other words, the only part of Ground Six's first subclaim Burgos has fully exhausted is his contention that trial counsel was ineffective for failing to depose Betterly and Frost.

*appellate review process.*" *O'Sullivan*, 526 U.S. at 845 (emphasis added). By not appealing the DNA issue to the Fourth DCA, Burgos didn't "fairly present [the subclaim] raised in his federal petition to the state's highest court," *Mason*, 605 F.3d at 1119—and, consequently, he failed to exhaust it.

Moving onto the third subclaim, Burgos *never* argued in state court that his trial counsel was ineffective for failing to move for a continuance. Burgos (it's true) *did* say, in his Amended Postconviction Motion, that trial counsel "lost his wife of many years" and still "pushed forward with Mr. Burgos' trial, despite Mr. Burgos telling him it was okay to request a continuance of the trial to deal with the loss of his loved one." Amended Postconviction Motion [ECF No. 9-1] at 153. And, Burgos added, "counsel's emotional and mental distress, as the result of the loss of his beloved wife, played a crucial [role] in the ineffective assistance he provided to Mr. Burgos[.]" *Ibid.* But he never suggested that counsel was *ineffective* for failing to request a continuance. *See generally ibid.* And, largely as a result, the state postconviction court's order never addressed any such failure-to-request-a-continuance argument. *See* Order Denying Amended Postconviction Motion [ECF No. 9-1] at 175–76 (summarizing the claims Burgos raised in his Amended Postconviction Motion).

But here's the thing: Even if we assumed that Burgos did offer this claim to the state postconviction court, he indisputably failed to raise it on appeal. *See generally* Postconviction Initial Brief [ECF No. 9-1] at 218–38. Because Burgos has raised Ground Six's third subclaim for the first time in this federal Petition, it's unexhausted. *See Mason*, 605 F.3d at 1119 ("[T]o properly exhaust a claim, the petitioner must fairly present every issue raised in his federal petition to the state's highest court, either on direct appeal or on collateral review." (cleaned up)).

To recap: Burgos has exhausted only that part of Ground Six that involves counsel's (alleged) failure to depose Drew Betterly and Cory Frost. All other aspects of Ground Six are unexhausted.

### E.  The Unexhausted Claims are Procedurally Defaulted

Burgos's petition is a "mixed petition: some of the claims were exhausted in the Florida state courts, while other claims were not presented to the state courts for review." *Snowden v. Singletary*, 135 F.3d 732, 736 (11th Cir. 1998). The Eleventh Circuit has cautioned that, when a habeas petitioner submits a "mixed petition," we should *usually* "dismiss the petition without prejudice to allow exhaustion." *Ward*, 592 F.3d at 1156. But there's one major exception to this rule—and it applies here. "[W]hen the claims raised for the first time at the federal level can no longer be litigated on the merits in state court because they are procedurally barred [under state law]. . . . requiring the petitioner to return to state court only to make a futile application for relief simply delays the federal courts' adjudication of his petition." *Kelley v. Sec'y for Dep't of Corr.*, 377 F.3d 1317, 1351 (11th Cir. 2004). In other words, "[i]f the petitioner has failed to exhaust state remedies that are no longer available, the failure is a *procedural default* which will bar federal habeas relief[.]" *Smith v. Jones*, 256 F.3d 1135, 1138 (11th Cir. 2001) (emphasis added).

And that's exactly what happened with Ground Four and the unexhausted parts of Ground Six here. Burgos failed to present the federal nature of these claims to the state's highest court (*i.e.*, the Fourth DCA), *see generally* Direct Appeal Initial Brief [ECF No. 9-1] at 74–80; Postconviction Initial Brief [ECF No. 9-1] at 218–38, and is now barred under Florida law from raising these claims in a successive appeal, *see Claughton v. Claughton*, 393 So. 2d 1061, 1062 (Fla. 1980) ("The general law and our procedural rules at both the trial and appellate levels are designed for one final judgment and one appeal."). Ground Four and the unexhausted portions of Ground Six are thus procedurally defaulted.

There are, to be sure, two exceptions to the general rule that a federal court may not consider a procedurally defaulted claim on the merits: "cause and prejudice" and "actual innocence." *Dretke v. Haley*, 541 U.S. 386, 393 (2004) ("[A] federal court will not entertain a procedurally defaulted constitutional claim in a petition for habeas corpus absent a showing of cause and prejudice to excuse

the default. We have recognized a narrow exception to the general rule when the habeas applicant can demonstrate that the alleged constitutional error has resulted in the conviction of one who is actually innocent of the underlying offense."). But, for either exception to apply, the petitioner bears the burden of proof. *See Gordon v. Nagle*, 2 F.3d 385, 388 (11th Cir. 1993) ("A defendant has the burden of establishing cause and prejudice."); *Arthur v. Allen*, 452 F.3d 1234, 1245 (11th Cir. 2006) ("The petitioner must support the actual innocence claim with new reliable evidence[.]" (cleaned up)). Burgos doesn't even try to suggest that these exceptions might save his claims here—*see generally* Petition; Reply—so he's forfeited any argument that they do, *see United States v. Campbell*, 26 F.4th 860, 873 (11th Cir. 2022) ("[F]ailure to raise an issue in an initial brief . . . should be treated as a forfeiture of the issue, and therefore the issue may be raised by the court *sua sponte* [only] in extraordinary circumstances."); *see also, e.g., DeJesus v. Sec'y, Fla. Dep't of Corr.*, 2022 WL 1262093, at *10 (S.D. Fla. Apr. 28, 2022) (Altman, J.) ("DeJesus doesn't even try to excuse his failure to exhaust . . . by pointing to some 'external cause, . . . [Nor does] he argue that he's actually innocent of the charges against him. That's pretty much the end of that.").

\* \* \*

In sum, Burgos has fully exhausted Grounds One, Two, and Three—so we'll review those claims on the merits. Ground Four we **DISMISS** as unexhausted and procedurally defaulted. Ground Five is **DISMISSED** because it's not cognizable on federal review. And, while we'll consider the merits of *one* of Ground Six's subclaims, the rest of Ground Six is procedurally defaulted and must be **DISMISSED**.

## II.     The Merits

If a habeas claim has been "adjudicated on the merits in State court proceedings," then we have the power to decide whether the state court's decision was "reasonable." 28 U.S.C. § 2254(d). In assessing whether the state court's adjudication was "reasonable," we look to the "highest state court"

that reached the merits of Burgos's claims. *Newland v. Hall*, 527 F.3d 1162, 1199 (11th Cir. 2008). In our case, the Fourth DCA was the highest court to consider all four properly exhausted claims—Grounds One, Two, and Three on direct appeal and Ground Six on collateral review. *See Burgos*, 228 So. 3d at 568; *Burgos*, 324 So. 3d at 488. Unfortunately, the Fourth DCA didn't explain its "decision on the merits in a reasoned opinion," so we must "look through" to the "last related state-court decision that does provide a relevant rationale." *Wilson*, 138 S. Ct. at 1192. If no state court "explain[s] its reasons for rejecting a claim," we presume "that the state court adjudicated the claim on the merits" and review the state-court record "to determine what arguments or theories supported, or [could have] supported, the state court's decision." *Hittson v. GDCP Warden*, 759 F.3d 1210, 1232 (11th Cir. 2014) (cleaned up). The habeas petitioner ultimately bears the burden "to demonstrate that there was no reasonable basis for the decision of [the state court] to deny his claim." *Tarleton v. Sec'y, Fla. Dep't of Corr.*, 5 F.4th 1278, 1291 (11th Cir. 2021).

### A. Ground One

In Ground One, Burgos claims that the trial court "reversibly erred" (and violated his Sixth Amendment right to effective representation) when it "failed to conduct a *Nelson* inquiry upon Petitioner's making it clear to the trial court that he wished to discharge his counsel[.]" Petition at 4. Before his trial (Burgos says), he recognized that his lawyer, Kevin Kulik, "was not rendering effective assistance of counsel to the Petitioner." *Ibid.* So, he asked the judge to hold a *Nelson* hearing and to dismiss his lawyer. *Ibid.* The trial court refused this request and instructed Burgos to "file through counsel the appropriate motion and [ ] confer with counsel." *Ibid.* In the Respondent's view, the trial court correctly found that *Nelson* simply didn't apply to Burgos's case because Mr. Kulik "was a private lawyer on the case." Response at 20. This claim is frivolous.

On August 23, 2011, Burgos filed a *pro se* "Motion to Dismiss Appointed Counsel" with the state trial court. *See* Motion to Dismiss Counsel [ECF No. 9-2] at 52–53. In that motion, Burgos

alleged that "[c]ounsel doesn't have the time to sit down and consult with the defendant in a proper manner and discuss the facts and strategies that he plans to purse in his line of defense." *Id.* at 52. Two days later (August 25, 2011), the trial court held a status hearing to address Burgos's Motion to Dismiss Counsel. *See* Status Hr'g Tr. [ECF No. 10-2] at 1–6. At that hearing, Mr. Kulik was unequivocal: "I'll withdraw from the case right now. I'm a private lawyer on this case. There's no such thing as a *Nelson* hearing on this case. If [Burgos] wants me off the case, I'm off, I'll walk right now." *Id.* at 2–3. Based on Mr. Kulik's blunt assessment, Burgos and the trial court engaged in the following colloquy:

> The Court: Mr. Burgos, listen to me, you have hired [Mr. Kulik] to represent you.
>
> The Defendant: Well, if he doesn't come see me, then I don't know what's going on in the case. I don' know what's going on.
>
> The Court: Let me be direct with you, if you have a court appointed lawyer, then we have to get into whether he's competent or incompetent. You hired him, or your family hired him.
>
> The Defendant: Right.
>
> The Court: If you want to fire him and get a court appointed lawyer, I have no problem with that.
>
> The Defendant: But isn't a *Nelson* hearing to basically mediate?
>
> The Court: Sir, read my lips, there is no such thing as a *Nelson* hearing when you have a private lawyer. Do you understand that?
>
> The Defendant: Yes, your Honor.
>
> The Court: Now, do you wish to discharge Mr. Kulik and hire another lawyer or get a court appointed lawyer, yes or no?
>
> The Defendant: No, I want to keep him. I just want him to do his job.
>
> The Court: If you have a problem with Mr. Kulik, talk to him in the privacy of your jail cell or wherever it is he sees you.

*Id.* at 3–4.

The trial court's decision not to hold a *Nelson* hearing was plainly reasonable. By his own admission, Burgos was represented by *retained* counsel. And, as the trial court explained, "[a] *Nelson* inquiry is appropriate when an indigent defendant attempts to *discharge current, and obtain new, court-appointed counsel* prior to trial due to ineffectiveness." *Branch v. State*, 685 So. 2d 1250, 1252 (Fla. 1996) (emphasis added). The purpose of a *Nelson* hearing is to protect an indigent defendant's Sixth Amendment rights by allowing him to receive new *court-appointed* counsel if "there is reasonable cause to believe that [the original *court-appointed*] counsel is not rendering effective assistance." *Watts v. State*, 593 So. 2d 198, 203 (Fla. 1992); *see also Thomas v. Sec'y, Dep't of Corr.*, 2020 WL 5814332, at *5 (M.D. Fla. Sept. 30, 2020) (Merryday, J.) ("*Nelson* establishes 'the procedure which the trial court should follow for the purpose of protecting an indigent's Sixth Amendment right to counsel in a criminal prosecution where before the commencement of the trial the Defendant moves to discharge appointed counsel.'" (quoting *Nelson*, 274 So. 2d at 258)). *Nelson*, in short, is inapposite here. *See Branch*, 685 So. 2d at 1252 ("*Nelson* is inapplicable here . . . . Branch's lawyer was privately hired, not court-appointed[.]"); *Fratcher v. State*, 842 So. 2d 1044, 1046 (Fla. 4th DCA 2003) ("In the present case the court erred by assuming that *Nelson,* which applies only when a defendant seeks to replace one court appointed counsel with another, applied to appellant's attempt to discharge his private counsel.").[8]

But Burgos's claim is even weaker than most because the trial court gave him the chance to *replace* Mr. Kulik with a court-appointed lawyer if he wanted one. *See* Status Hr'g Tr. [ECF No. 10-2] at 3. Instead, as we've seen, Burgos got cold feet and chose to stick with Mr. Kulik. *See id.* at 4. We agree with the state courts that, in these circumstances, Burgos's *Nelson* claim is totally meritless. We thus **DENY** Ground One.

---

[8] And Burgos should've known better. His own appellate counsel, in fact, *likewise* acknowledged that this *Nelson* claim was unviable. *See* Direct Appeal Reply Brief [ECF No. 9-1] at 108 ("Undersigned counsel was mistaken in his belief that Attorney Kulik had been appointed by the trial court to represent Mr. Burgos, . . . . As such, Mr. Burgos concedes that a *Nelson* inquiry was not applicable in his case.").

### B. Ground Two

In Ground Two, Burgos contends that the trial court ignored his "unequivocal request for self-representation" and refused to hold a *Faretta* hearing. Petition at 6. The Respondent counters that the trial court "did not commit reversible error because: (1) Petitioner 'did not unequivocally assert a request to represent himself, and thus the trial court was not required to conduct a *Faretta* inquiry,' and (2) Petitioner 'confirmed on the record that he wanted to maintain representation by private counsel.'" Response at 21.

In *Faretta*, the Supreme Court held that the Sixth Amendment affords criminal defendants "the right to self-representation" and to "make one's own defense personally." 422 U.S. at 819. But, "[b]ecause the constitutional rights to counsel and to self-representation cannot be exercised at once," a defendant who wants to represent himself must "knowingly and intelligently waive his right to counsel." *Hakim*, 30 F.4th at 1322 (citing *Faretta*, 422 U.S. at 835). To ensure that a criminal defendant has *both* properly asserted his right to self-representation *and* waived his right to counsel, the *Faretta* Court outlined a two-step process for trial courts to follow. *First*, "[b]efore a court allows a criminal defendant to proceed *pro se*, the defendant must clearly and unequivocally assert his right of self-representation." *Nelson v. Alabama*, 292 F.3d 1291, 1295 (11th Cir. 2002) (citing *Faretta*, 422 U.S. at 835). Since "shrewd litigants can exploit this difficult constitutional area by making ambiguous self-representation claims to inject error into the record," a request for self-representation must be so clear and obvious that "no reasonable person can say that the request to proceed *pro se* was not made." *Gill v. Mecusker*, 633 F.3d 1272, 1293–94 (11th Cir. 2011) (cleaned up). *Second*, if the defendant has unambiguously expressed his desire to represent himself, then the trial court must "hold a hearing to advise [the] defendant on the dangers of proceeding *pro se* and make an explicit finding that he has chosen to represent himself with adequate knowledge of the possible consequences." *Nelson*, 292 F.3d at 1295.

25

In our case, the state trial court didn't need to hold a *Faretta* hearing (step two) because Burgos never made a "clear and unequivocal request" to represent himself (step one). Burgos raised the question of representation *twice* before the trial court. His first foray was through the Motion to Dismiss Counsel we discussed earlier, in which he asked the trial judge to "dismiss appointed counsel from the record[.]" Motion to Dismiss Counsel [ECF No. 9-2] at 52. But this motion never even hinted at any desire at self-representation. *See generally ibid.* In his second stab at the issue, Burgos filed another "Motion for *Nelson* Hearing," through which he asked the trial judge to "conduct a *Nelson* hearing to determine if the Defendant is receiving effective assistance of counsel." Motion for Nelson Hearing [ECF No. 9-2] at 61. Again, nowhere in this motion did Burgos so much as suggest that he was interested in representing himself. *See generally ibid.* And, as we've said, the law is well-settled that, to trigger a *Faretta* hearing, a criminal defendant must *unequivocally* express a desire to represent himself. *See, e.g., Duncan v. Sec'y, Fla. Dep't of Corr.*, 2021 WL 4464431, at *7 (N.D. Fla. Aug. 20, 2021) (Jones, Mag. J.) ("The record shows that the trial court discussed the difference between a *Nelson* hearing and a *Faretta* hearing with Petitioner. The court explained that a *Nelson* hearing is not appropriate in situations where the defendant seeks to represent himself, as was the case here. In a *Nelson* hearing, rather, *the defendant requests substitute counsel, not a waiver of his right to counsel.*" (emphasis added & cleaned up)), *report and recommendation adopted*, 2021 WL 4465996 (N.D. Fla. Sept. 29, 2021) (Rodgers, J.).

Indeed, the Eleventh Circuit has repeatedly refused to construe a defendant's dissatisfaction with counsel's performance as an unequivocal request for self-presentation. In *Gill*, for instance, the Eleventh Circuit held that it was reasonable for a state court to conclude that a defendant's "written [motion] to substitute himself in as counsel"—filed after the trial court denied a "motion to remove [trial counsel] and substitute in other counsel"—was *not* "a clear statement of Gill's desire or intent to proceed without counsel." 633 F.3d at 1295. Because "Gill vacillated between self-representation and

being represented by counsel," his "request was equivocal and was not sufficient to invoke *Faretta*." *Id.* at 1295–96.

Likewise, in *Edmondson v. Attorney General*, 853 F. App'x 484 (11th Cir. 2021), the court found that the defendant's statement "I will [go to trial] on my own if I have to," coupled with his request that the trial judge fire his court-appointed lawyer, was ambiguous and insufficient to trigger a *Faretta* hearing. *Id.* at 487. These statements (the court said) merely indicated the defendant's desire "to secure substitute counsel" and didn't "[let] the state trial court know that he wanted to go pro se." *Id.* at 488–89.

Burgos, of course, isn't even in the same ballpark as the defendants in *Gill* and *Edmondson*. Those defendants at least mentioned self-representation in their requests to the trial courts. Burgos, by contrast, *never* suggested to the trial court that he was willing to represent himself. *See* Motion to Dismiss Counsel [ECF No. 9-2] at 52–53; Motion for *Nelson* Hearing [ECF No. 9-2] at 61. Instead, in both of his state-court motions, Burgos complained about the conduct of his own *privately retained* lawyer. And, when the state court responded to these complaints with a sensible solution—giving Burgos the option of firing his retained lawyer and of having the court appoint a new lawyer for him— Burgos backed off and agreed to stick with Mr. Kulik. *See* Status Hr'g Tr. [ECF No. 10-2] at 3–4 ("The Court: Now, do you wish to discharge Mr. Kulik and hire another lawyer or get a court appointed lawyer, yes or no? The Defendant: No, I want to keep him. I just want him to do his job."). On these facts, no reasonable trial judge would conclude that Burgos wanted to represent himself. *See Stano v. Dugger*, 921 F.2d 1125, 1144 (11th Cir. 1991) ("Once the right of self-representation has been asserted clearly and unequivocally, understandable to the trial court by the reasonable person standard, then and only then is that court . . . required to conduct the requisite inquiry to determine whether the criminal defendant's decision to represent himself is knowing, intelligent and voluntary.").

We thus **DENY** Ground Two on the merits.

### C. Ground Three

In Ground Three, Burgos blames the trial court for denying his two *pro se* demands for a speedy trial on the ground that he was "currently represented by counsel." Petition at 7. According to Burgos, his prior "unequivocal request[s] for self representation" should've signaled to the court that he was not, in fact, represented by counsel. *Ibid.* As we just explained, however, Burgos *never* made an "unequivocal request" to represent himself, so the trial court correctly applied the long-settled, Florida-law principle that "a *pro se* pleading filed by a criminal defendant should be treated as a nullity when the defendant is represented by counsel." *Vasquez v. State*, 956 So. 2d 493, 494 (Fla. 5th DCA 2007). Ground Three, in short, is **DENIED**.

### D. Ground Six

In Ground Six, Burgos blames his lawyer for "failing to investigate and prepare for trial." Petition at 13. As we've discussed (*see supra* note 7), we'll address only Burgos's claim that his lawyer was ineffective for failing to depose Drew Betterly (the codefendant) and Cory Frost. As to these two, Burgos contends that, had they been deposed, counsel would have "been made aware of the plot" between Betterly and the two victims to rob Burgos. Petition at 13. The state postconviction court rejected this claim, reasoning that (1) Frost wasn't "at the scene of the crime at the time of the robbery" and thus couldn't testify about Burgos's conversations with Betterly *before* the robbery, and (2) that, "[h]ad co-defendant Betterly testified, his testimony would have been consistent with his police statement about planning the robbery with [Burgos]." Order Denying Amended Postconviction Motion [ECF No. 9-1] at 177. The postconviction court also adopted the State's Postconviction Response, in which the State argued, among other things, that "[t]he decision of whether to call a witness other than the defendant is the decision of counsel not the defendant." [ECF No. 9-1] at 163. As a result, the court found, neither witness's testimony would've "cause[d] an acquittal upon retrial." Order Denying Amended Postconviction Motion [ECF No. 9-1] at 177. Since the state postconviction

court's Order Denying Amended Postconviction Motion is the "last related state-court decision that does provide a relevant rationale," we'll review the reasonableness of that decision under § 2254(d)'s heightened standard of review. *Wilson*, 138 S. Ct. at 1192 ("[A] federal court should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale.").

"[C]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Strickland*, 466 U.S. at 691. At the same time, a defense lawyer has "no absolute duty . . . to investigate particular facts or a certain line of defense." *Chandler*, 218 F.3d at 1318. And, generally speaking, we invest criminal defense lawyers with the discretion to decide which witnesses to call (or not to call) at trial. *See Waters v. Thomas*, 46 F.3d 1506, 1512 (11th Cir. 1995) (en banc) ("Which witnesses, if any, to call, and when to call them, is the epitome of a strategic decision, and it is one that we will seldom, if ever, second guess.").

"In evaluating whether counsel has discharged this duty to investigate . . . we follow a three-part analysis." *Porter v. Singletary*, 14 F.3d 554, 557 (11th Cir. 1994). *First*, we ask whether "a reasonable investigation" would have uncovered additional evidence that might have been useful to the defense. *Ibid. Second*, we determine whether counsel's failure to investigate this evidence resulted from an "unreasonable" trial strategy such "that no competent counsel would have taken the action that [the petitioner's] counsel did take." *Ward*, 592 F.3d at 1164; *see also Porter*, 14 F.3d at 557 ("[A] determination must be made whether the failure to put this evidence before the jury was a tactical choice by trial counsel. If so, such a choice must be given a strong presumption of correctness, and the inquiry is generally at an end."). *Third*, even if we conclude that counsel rendered deficient performance, the petitioner must still show that, "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Porter*, 14 F.3d at 557.

The crux of Ground Six is Burgos's belief that, on the day before the robbery, Betterly and the two victims had conspired to rob Burgos of his prescription drugs—a conspiracy that would've

bolstered Burgos's defense, which was that *he* was the real victim here. *See* Amended Postconviction Motion [ECF No. 9-1] at 149 ("Had counsel taken the opportunity to speak with these witnesses, he would have been made aware of the plot . . . as well as the extent of the drug trafficking ring [the victims] were involved in . . . . Counsel would also have had the opportunity to confront Mr. Betterly with the allegations that he had set Mr. Burgos up to be robbed.").

The state postconviction court's decision to deny this claim was reasonable. All the available pre-trial evidence indicated to Burgos's defense lawyer that, far from exonerating Burgos as a victim, Betterly had *directly implicated* Burgos in the robbery. *See* Betterly Plea Hr'g Tr. [ECF No. 9-2] at 131 ("[The Prosecutor:] [My] understanding of the truth is that Mr. Betterly and Mr. Burgos were both together involved in trying to rob Mr. Swagger and Mr. Langsford. And that Mr. Burgos had the gun, the gun went off and things went south from there. The Court: Is that correct, sir? Mr. Betterly: Yes, sir."); Betterly Interview Tr. [ECF No. 9-2] at 151 ("We drove around the corner. [Burgos], uh, pulls out the gun and says give me all your shit. Okay? They go to give him all their shit. They start fuckin' struggling. They grab the gun. Pop-pop. And the boy got shot."). Contra Burgos's post-trial assertions, in other words, any rational defense lawyer would've concluded that Betterly was a government cooperator—and that, as a result, deposing him would've served only to lock Betterly into damaging (and sworn) testimony. *See, e.g., German v. Inch*, 2020 WL 5087046, at *19 (S.D. Fla. Aug. 28, 2020) (Altman, J.) ("Given this testimony, this Court cannot . . . fault German's trial counsel for refusing to call Detective Carr. In fact, counsel's decision was probably the right one. Consider for a moment the options counsel was weighing at the time. On the one hand, he could call Detective Carr who (very likely) would have corroborated everything Detective Murray had already said. Counsel thus would have done little more than allow Detective Carr to—as it were—hammer home the final nail to a coffin Detective Murray had meticulously constructed."). We don't force lawyers to take non-existent (and unpromising) leads. *See Chandler*, 218 F.3d at 1318 ("Investigation (even a nonexhaustive,

preliminary investigation) is not required for counsel reasonably to decline to investigate a line of defense thoroughly."); *United States v. Godwin*, 910 F. Supp. 596, 600 (M.D. Fla. 1995) (Kovachevich, J.) ("[W]hen facts tend to support a potential line of defense and such facts are known to counsel because of defendant's statements, the need for further investigation may be non-existent.").[9]

Deposing Frost would have proven no more helpful. According to his affidavit, Frost would have testified that he overheard Betterly and the victims "conspiring a robbery" against Burgos. *See* Frost Affidavit [ECF No. 9-2] at 76. But that's not a new defense Burgos's counsel might have "discovered" if he'd just tried a bit harder. Burgos, after all, had always pitched this story—from the day of his arrest. *See* Probable Cause Affidavit [ECF No. 9-2] at 182 ("In a post *Miranda* interview defendant Burgos denied being in possession of any firearm and indicated how he was the intended victim of a Robbery."). Despite knowing about this potential defense, Burgos's lawyer chose a different strategy—*viz.*, that the State couldn't prove Burgos was even the shooter. *See* Trial Tr. [ECF No. 10-1] at 47 ("In this case is the State ever going to be able to prove that Badi Burgos is the one who pulled this gun and shot this guy when the DNA excludes him as a contributor and the witnesses are so bad? There's no way."). This was a perfectly reasonable strategy we won't second-guess on collateral review. *See Chandler*, 218 F.3d at 1318 ("For example, counsel's reliance on particular lines of defense to the exclusion of others—whether or not he investigated those other defenses—is a matter of strategy and is not ineffective unless the petitioner can prove the chosen course, in itself, was unreasonable.").

---

[9] It's true that Betterly later recanted the statements he made to the State under oath. *See* Betterly Affidavit [ECF No. 9-2] at 85 (claiming that "Stephen Langsford pulled out a gun," not Burgos). But there was no way for defense counsel to have predicted that Betterly would, at some later date, walk back his sworn (and inculpatory) statements. *See Harrington*, 562 U.S. at 110 ("Just as there is no expectation that competent counsel will be a flawless strategist or tactician, an attorney may not be faulted for a reasonable miscalculation or lack of foresight or for failing to prepare for what appear to be remote possibilities.").

We, in other words, don't find it unreasonable for counsel to have believed that placing his client at the murder scene (*i.e.*, in the car), putting the murder weapon in his hand, and *admitting* that his client fired the fatal shot was all just too much of a risk—especially when the *lack* of DNA evidence in a messy murder scene rather supported counsel's alternative view of the facts. *Cf. DeJesus*, 2022 WL 1262093, at *18 ("We cannot fault defense counsel for refusing to gamble on a dangerous alibi defense that, as we've seen, was riddled with inconsistencies and which, if unsuccessful, would've placed their client near the scene of the crime."). Remember, in this regard, that opting for Burgos's preferred defense would've forced defense counsel into the awkward position of having to ignore, as *totally irrelevant*, the potentially exculpatory fact that the DNA expert *excluded* his client as a possible contributor to the DNA mixture found in the car. *See* Trial Tr. [ECF No. 10-1] at 232 ("[Defense Counsel:] Okay. So, basically, of the DNA you were able to detect [on the holster], you're conclusively saying it's not [Burgos], you're excluding him? [DNA Expert:] Again, he's not consistent, so I excluded him, based on the information I have. [Defense Counsel:] You tend to give odds when you get a positive result, but when you exclude somebody, it's definitely not them; correct? [DNA Expert:] Right. No odds are associated if that person is excluded. [Defense Counsel:] Okay. Also with the gun, which includes the grip, the trigger, the handle, Mr. Burgos is excluded; correct? [DNA Expert:] He's excluded as the source of the major profile from that item."). In these circumstances, we don't think it's too much to say that counsel reasonably chose favorable (and objective) DNA evidence over a questionable (and extremely subjective) theory of self-defense.[10]

---

[10] Even if counsel's strategic decision had been the wrong one, we also think the state court reasonably applied *Strickland* because there's no "reasonable probability," *Strickland*, 466 U.S. at 694, that the outcome of the trial would've been different if defense counsel had opted to use Frost's testimony. The State's primary witness was the surviving victim, Swagger, who *both* identified Burgos as the shooter *and* explained that the shooting stemmed from a drug-deal robbery gone wrong. *See* Trial Tr. [ECF No. 10-1] at 247 ("Q: And did you identify Mr. Burgos as being the person who was in the car? A: A hundred percent positive."); *id.* at 252 ("Q: Who produced the gun? A: Mr. Burgos."). The State argued that, while Swagger was trying to buy drugs—and although he did, in his initial statement, lie to the police about why he was in the car with Betterly and Burgos—Swagger's actions after the

In short, because we won't blame counsel for having decided *not* to depose either Betterly or Frost, this aspect of Ground Six is likewise **DENIED**.

## EVIDENTIARY HEARING

We won't hold an evidentiary hearing in this case. "[W]hen the state-court record 'precludes habeas relief' under the limitations of § 2254(d), a district court is 'not required to hold an evidentiary hearing.'" *Cullen v. Pinholster*, 563 U.S. 170, 183 (2011) (quoting *Schriro v. Landrigan*, 550 U.S. 465, 474 (2007)). Based on what we've said—including and especially the presence of a robust trial and state-postconviction record—we don't think we'd benefit from any further factual development.

## CERTIFICATE OF APPEALABILITY

A Certificate of Appealability ("COA") is appropriate only when the movant makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To deserve a COA, therefore, the movant must show that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). "Where a district court has disposed of claims . . . on procedural grounds, a COA will be granted only if the court concludes that 'jurists of reason' would find it debatable both 'whether the petition states a valid claim of the denial of a constitutional right' and 'whether the district court was correct in its procedural ruling.'" *Eagle v. Linahan*, 279 F.3d 926, 935 (11th Cir. 2001) (quoting *Franklin v. Hightower*, 215 F.3d

---

shooting suggested that his story was credible. *See id.* at 369–70 ("Look at the actions of Mr. Swagger and Mr. Langsford, consistent with people who have been robbed and the victims of what's going to be [ ] a homicide, by seeking the help of the police, summoning the police, not running away from them, not taking their clothes off, not trying to hide evidence, their clothing or themselves."). The State then effectively contrasted Swagger's behavior with Burgos's frantic flight from the scene. *See id.* at 370 ("Mr. Burgos, what are his actions? Continuously taking away, avoiding the police, disposing of evidence, DNA, firearm, consistent with what? The perpetrator of a robbery. A consciousness of guilt, that's how he acted."). Given this context, a self-defense theory would have done very little to rebut the State's argument that Swagger was credible and Burgos was not. In fact, it likely would've *strengthened* the State's "consciousness of guilt" contentions by further highlighting just how much Burgos's behavior differed from Swagger's—which is to say, differed from the way in which we would *reasonably* expect the *victim* of an attempted robbery to behave.

1196, 1199 (11th Cir. 2000)). Jurists of reason wouldn't find debatable our decision to dismiss Grounds Four and Five and parts of Ground Six. Nor would "reasonable jurists" disagree with our decision to deny Grounds One, Two, Three, and (one part of) Six on the merits. We thus **DENY** any request for a COA.

***

Having carefully reviewed the record and the governing law, we hereby **ORDER AND ADJUDGE** that the Petition [ECF No. 1] is **DISMISSED in part** and **DENIED in part**, that a COA is **DENIED**, that any request for an evidentiary hearing is **DENIED**, that all deadlines are **TERMINATED**, and that any pending motions are **DENIED** as moot. The Clerk shall **CLOSE** this case.

**DONE AND ORDERED** in the Southern District of Florida on November 18, 2022.

_____

**ROY K. ALTMAN**
**UNITED STATES DISTRICT JUDGE**

cc:    Badi Burgos, *pro se*
       counsel of record